IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH DOUGLAS BEALER,<br><br>Defendant. | CR. NO. 19-00065 JAO<br><br>**ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION FOR IMMEDIATE RELEASE** |

**ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION FOR IMMEDIATE RELEASE**

Defendant Joseph Douglas Bealer ("Defendant") filed a Motion for Immediate Release under the First Step Act (Compassionate Release) ("the Motion"), ECF No. 55, arguing that, due to his current health, he faces a high risk of death or hospitalization should he become infected with COVID-19.  ECF No. 55-1 at 9.  The Court decides this motion without a hearing pursuant to Local Rule 7.1(c).  For the following reasons, the Motion is DENIED.

I.    BACKGROUND

A.    Procedural History

Defendant pleaded guilty to an Information charging him with Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and Possession of Firearms and Ammunition while Unlawfully

Using and Addicted to a Controlled Substance, in violation of 18 U.S.C. § 922(g)(3).  ECF No. 35.  On September 9, 2019, the Court partially granted Defendant's request for a downward variance[1] and sentenced him as to each count to an incarceration term of 36 months and a supervised release term of three years, with the sentences for each count to run concurrently.  ECF No. 49.  Defendant reported to serve his term of incarceration at Satellite Camp Prison Sheridan ("FCI Sheridan Camp"),[2] in Oregon, on October 15, 2019.  ECF No. 52.

On July 24, 2020, Defendant requested compassionate release from the warden, ECF No. 55-4, and Defendant filed the Motion on October 15, 2020.  ECF No. 55.  The Government filed a Response on October 26, 2020.  ECF No. 61. Defendant filed a Reply on November 9, 2020, ECF. No. 62, a Notice of Supplemental Authority on November 23, 2020, ECF No. 63, and a Second Notice of Supplemental Authority on December 3, 2020, ECF No. 64.

---

[1]  The Court calculated Defendant's advisory guideline range as 46 to 57 months. *See* ECF Nos. 45 (Presentence Investigation Report ("PSR")), 47 (adopting the PSR's guideline calculations).

[2]  The Bureau of Prisons facility in Sheridan, Oregon consists of a "medium security federal correctional institution with an adjacent minimum security satellite camp and a detention center."  Federal Bureau of Prisons, https://www.bop.gov/ locations/institutions/she (last visited Dec. 8, 2020).  When referring to the facility as a whole, the Court will use the term "FCI Sheridan."

B.    Defendant's Background

1.    Defendant's Current Condition

Defendant, who is 47 years old, avers, and the medical records provided

from the Bureau of Prisons ("BOP") indicate, that he currently suffers from

chronic obstructive pulmonary disease ("COPD"), is overweight[3] as he has a Body

Mass Index ("BMI") of 29, and smoked one pack of cigarettes per day for 30

years.  ECF No. 59.  Since incarceration, he has had increasing shortness of breath.

*Id.*  In March, he passed out while exercising, which the attending paramedic

attributed to dehydration.  *Id.*  On four occasions between March and July, his

oxygen saturation levels were checked and reached no lower than 96%, *id.*, which

is normal.[4]  He had elevated blood pressure on those same dates.  ECF No. 59.

---

[3]  *See Ctrs. for Disease Control & Prevention*, "How is BMI interpreted for
adults?," https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/index.html#
InterpretedAdults (last visited Dec. 8, 2020) (indicating that the weight status of a
person with a BMI of 25.0–29.9 is "overweight").

[4]  *See Ctrs. for Disease Control & Prevention*, "Update: Interim Guidance for
Health Care Providers for Managing Patients with Suspected E-cigarette, or
Vaping, Product Use–Associated Lung Injury — United States, November 2019,"
https://www.cdc.gov/mmwr/volumes/68/wr/mm6846e2.htm (last visited Dec. 8,
2020) (referring to "normal oxygen saturation" as "[greater than or equal to]
95%").

2.      Defendant's History and Post-sentencing Behavior

Defendant acknowledged in his plea agreement in this case that on August 9, 2018, he possessed in his home seven different firearms, more than 1000 rounds of ammunition, more than 70 grams of heroin (some of which he intended to distribute), and a "flash powder explosive device."  ECF No. 40.  He also admitted that he was addicted to heroin at the time he possessed these items.  *Id.*

Defendant had no criminal convictions prior to this case and has been a model inmate.  After sentencing, Defendant voluntarily surrendered to FCI Sheridan Camp.  Since he has been there, he completed the Residential Drug Abuse Treatment Program, ECF No. 55-6, and a wide variety of classes, ECF No. 55-7.  He has not committed any disciplinary violations and is categorized as a minimum risk inmate.  ECF No. 55-8.

Defendant is scheduled to be released from FCI Sheridan Camp on December 9, 2021, *see* Federal Bureau of Prisons, https://www.bop.gov/inmateloc (follow "Find By Name" tab; then search for "Joseph Bealer") (last visited Dec. 8, 2020), but informs the Court that he is eligible for release to a halfway house on June 14, 2021.  ECF No. 55-1 at 29.  In any event, he has served approximately half of his sentence to date.

C.      Conditions at FCI Sheridan

As of this writing, FCI Sheridan has two active COVID-19 cases among inmates and five active COVID-19 cases among staff.  *See* Federal Bureau of Prisons, https://www.bop.gov/coronavirus (mouse over "FCI Sheridan") (last visited Dec. 8, 2020).  It presently has a population of 1,459 inmates, 346 of whom are at FCI Sheridan Camp.  *See* Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/she (last visited Dec. 8, 2020).  The BOP apparently does not publish the number of cases specific to FCI Sheridan Camp, which is where Defendant is housed.

II.     DISCUSSION

A.      The First Step Act

Prior to the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ("First Step Act"), only the BOP could move for an inmate's compassionate release.  *See* 18 U.S.C. § 3582(c)(1)(A) (2012).  But the First Step Act amended, among other things, 18 U.S.C. § 3582(c)(1)(A), which now allows inmates to seek compassionate release:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors

> set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
> > (i)   extraordinary and compelling reasons warrant such a reduction; . . .
> > *and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*[.]

18 U.S.C. § 3582(c)(1)(A) (2018) (emphasis added).

United States Sentencing Guidelines ("USSG") section 1B1.13 ("the Guideline") addresses Section 3582 motions, but the Sentencing Commission has not updated the Guideline since the passage of the First Step Act.[5]   The Guideline allows for a sentence reduction for compassionate release "[u]pon motion of the Director of the Bureau of Prisons . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that . . . extraordinary and compelling reasons warrant the reduction[.]"   USSG § 1B1.13. It further outlines four categories of extraordinary and compelling reasons in the application notes:  the defendant's medical condition, the defendant's age (at least 65 years old), family circumstances, and "other reasons."   *Id.*, comment. (n.1). This last category is known as the "catch-all" clause.   *United States v. Brooker*,

---

[5]  The Commission's failure to amend the Guideline is likely due to its lack of sufficient members for a quorum.  *See U.S. Sentencing Commission*, "About the Commissioners," https://www.ussc.gov/commissioners (last visited Dec. 8, 2020) (listing only 2 voting commissioners); *U.S. Sentencing Commission*, "Organization," https://www.ussc.gov/about/who-we-are/organization (last visited Dec. 8, 2020) ("The affirmative vote of at least four members of the Commission is required to promulgate amendments to the sentencing guidelines.").

976 F.3d 228, 232 (2d Cir. 2020).  The Guideline notes also explain that the catch-all clause applies when, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the [other] reasons[.]"  USSG § 1B1.13, comment. (n.1).  In other words, according to the Guideline, wide discretion regarding what constitutes an "extraordinary and compelling reason" rests only with the BOP Director.

The change in the compassionate release statute and lack of amendment to the Guideline begs the question of whether the Guideline applies to *all* Section 3582 motions—including those brought by defendants.  The Court concludes that it does not.

Turning first to the plain language of the Guideline, *see United States v. Cruz-Gramajo*, 570 F.3d 1162, 1167 (9th Cir. 2009), its application is clearly limited to compassionate release motions filed by the BOP Director.  *See* USSG § 1B1.13 ("Upon motion of the Director . . . .").  And this plain reading now has support from four Circuits and numerous district courts within the Ninth Circuit. *See Brooker*, 976 F.3d at 235 ("Turning to the text of the Guideline § 1B1.13, it is manifest that its language is clearly outdated and cannot be fully applicable.  The very first words of the Guideline are '[u]pon motion of the Director of the Bureau of Prisons.'" (alteration in original and citation omitted)); *see United States v.*

*Jones*, No. 20-3701, 2020 WL 6817488, at *8 (6th Cir. Nov. 20, 2020)

("Examining the four corners of § 1B1.13 alone, it becomes immediately apparent

that the policy statement does not wholly survive the First Step Act's

promulgation.  The first sentence of § 1B1.13 predicates the entire policy statement

on the Director of BOP's filing a motion for compassionate release." (citation

omitted)); *United States v. McCoy*, Nos. 20-6821, 20-6869, 20-6875, 20-6877,

2020 WL 7050097, at *7 (4th Cir. Dec. 2, 2020); *United States v. Gunn*, No. 20-

1959, 2020 WL 6813995, at *2 (7th Cir. Nov. 20, 2020) ("Section 1B1.13

addresses motions and determinations of the Director, not motions by prisoners.  In

other words, the Sentencing Commission has not yet issued a policy statement

'applicable' to Gunn's request.  And because the Guidelines Manual lacks an

applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not

curtail a district judge's discretion.  Any decision is 'consistent with' a nonexistent

policy statement."); *see also, e.g.*, *United States v. Parker*, 461 F. Supp. 3d 966,

978–79 (C.D. Cal. 2020) (collecting cases and rejecting the argument "that pre-

[First Step Act] categories contained in U.S.S.C. § 1B1.13 limit [a court's]

discretion to determine whether an inmate has raised 'extraordinary and

compelling' circumstances that justify the modification of her sentence." (quoting

*United States v. Wade*, No. 2:99-cr-00257-CAS-3, 2020 WL 1864906, at *5 (C.D.

Cal. Apr. 13, 2020)); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681–82

8

(N.D. Cal. 2019) (collecting cases); *United States v. Manzo*, Nos. 2:07-CR-02042-LRS-2, 2:07-CR-02071-LRS-1, 2020 WL 6786898, at *2 (E.D. Wash. Nov. 18, 2020); *United States v. Hernandez*, CR. NO. 13-00511(1) JMS, 2020 WL 3453839, at *4 (D. Haw. June 24, 2020) (collecting cases).

The plain language of the statute itself does not alter this conclusion.  The First Step Act directs the Court to evaluate whether "a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A) (emphasis added).  Because the Guideline does not apply here, the Court is not restricted by it or its notes and relies on the direction outlined in the statute.  *See McCoy*, 2020 WL 7050097, at *7 ("What § 3582(c)(1)(A) requires is that sentence reductions be consistent with 'applicable policy statements.'  And here, that consistency requirement simply is not implicated, for the threshold reason that there currently exists no 'applicable policy statement.'" (brackets omitted)).

Even if the Court were to look past the plain language of both the statute and the Guideline, it is undisputed that the First Step Act was passed in an effort to reduce incarceration, *see generally* 164 Cong. Rec. S7640–50 (daily ed. Dec. 17, 2018); *see also* Congressional Research Service, *The First Step Act of 2018: An Overview* (Mar. 4, 2019), https://crsreports.congress.gov/product/pdf/R/R45558, and that Congress amended Section 3582 in response to the BOP's underwhelming

number of compassionate release motions.  *See* First Step Act § 603(b), 132 Stat. at

5239 (titled "Increasing the Use and Transparency of Compassionate Release");

*see also Brooker*, 976 F.3d at 233.  To conclude, then, that the Guideline applies

only to motions brought by BOP would undermine the intent of the passage of the

First Step Act and in particular the amendments made to the compassionate release

statute.  *See Jones*, 2020 WL 6817488, at *8 ("It would make little sense for the

courts to operate as if the BOP remains the sole gatekeeper of compassionate

release, which would reflect a bygone era that Congress intentionally amended in

the First Step Act.").

       B.       Whether Extraordinary and Compelling Reasons Exist Here

Unfettered by USSG § 1B1.13, the Court follows Section 3582(c)(1)(A)'s

direction.  The Court finds—and it is undisputed—that Defendant has met the

administrative requirements for filing the Motion.

       1.       Section 3553(a) Factors

Defendant was a heroin user when he possessed a significant arsenal of

dangerous weaponry and a highly addictive drug which he intended to distribute to

others.  Significantly, however, Defendant had no prior criminal history and

underwent pre-trial drug treatment at an intensive in-patient facility.  But the Court

already considered these factors when granting a downward variance.

More relevant here, Defendant has performed admirably while incarcerated. He has extensively worked toward self-improvement once incarcerated by completing the residential drug treatment program despite the likelihood that he will not receive time off for such participation.  *See* ECF No. 55-1 at 28.  He has engaged in a wide range of classes that demonstrate a sincere effort to rehabilitate. In sum, the Section 3553(a) factors weigh in his favor.

2.      Defendant's Stated Extraordinary and Compelling Reasons

Defendant urges the Court to find that the "outbreak of COVID-19 in the BOP," the conditions at FCI Sheridan Camp, and his own health conditions constitute extraordinary and compelling reasons under Section 3582.  ECF No. 55-1 at 11, 20.

Defendant does suffer from at least two conditions that place him at increased risk of severe illness if he were to contract COVID-19:  COPD and a lengthy history of smoking.  *See Ctrs. for Disease Control & Prevention*, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions%2Fgroups-at-higher-risk.html (last visited Dec. 8, 2020).  His BMI (29) and arguable hypertension are conditions for which he "might be at an increased risk for severe illness."  *Id*. (emphasis omitted).  The Court acknowledges that, in combination, Defendant's health conditions make him more vulnerable to serious complications from COVID-19 than a healthy person.

11

Defendant points to the concerning outbreaks of COVID-19 at many BOP facilities across the country, arguing that "[t]he only thing that seems to separate FCI Sheridan from these facilities is luck and timing."  ECF No. 55-1 at 23–24. But in so arguing, he necessarily concedes that FCI Sheridan has not and does not face a similar volume of COVID-19 cases as in some other prisons.

Defendant further contends that inmates at the FCI Sheridan Camp "live, work, eat, study, sleep, and participate in activities in congregate environments[,]" *id.* at 19–20, which creates a greater risk of COVID-19 spread, but later states that the facility has taken a "punitive approach to the pandemic[,]" including extensive lockdowns that drastically limit inmates' time outside of their cells.  *Id.* at 21–22. Whichever is true—or even if both are somehow true—the Court is not persuaded that FCI Sheridan's current COVID-19 numbers suggest that the BOP is failing to protect Defendant from COVID-19 *at FCI Sheridan Camp*.[6]

---

[6]  In *United States v. Akina*, CR. NO. 16-00739 JMS-01, 2020 WL 6065300, at *1, *4 (D. Haw. Oct. 14, 2020), and *United States v. Kaukani*, CR. NO. 16-00516-SOM-2, 2020 WL 6065298, at *1, *4 (D. Haw. Oct. 14, 2020), Chief Judge J. Michael Seabright and Judge Susan Oki Mollway, respectively, denied motions for compassionate release filed by defendants at FCI Sheridan.  At the time the Orders in those cases were issued, there were no cases of COVID-19 at FCI Sheridan. The Court acknowledges that there are now active COVID-19 cases at FCI Sheridan, including two inmates and five staff.  This does not suggest to the Court that FCI Sheridan is on the brink of an uncontrolled outbreak.

Simply put, the COVID-19 numbers at FCI Sheridan are not significant enough to constitute an extraordinary and compelling reason to grant the Motion. The Court of course cannot predict that FCI Sheridan Camp will remain a relatively safe place for Defendant, and so invites him to return to the Court should conditions meaningfully change.

III.    CONCLUSION

For the foregoing reasons, the Motion, ECF No. 55, is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, December 8, 2020.



Jill A. Otake
United States District Judge

Cr. No. 19-00065 JAO, *United States v. Joseph Douglas Bealer*; ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION FOR IMMEDIATE RELEASE